**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MARIO ARENAS MERCADO, <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 16-cv-04200-BLF <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; REVERSING THE DENIAL OF BENEFITS; AND REMANDING FOR DE NOVO ADMINISTRATIVE PROCEEDINGS** <br><br> [Re: ECF 16, 17] |

Plaintiff Mario Arenas Mercado appeals a final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, denying his applications for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act, respectively. Before the Court are the parties' cross-motions for summary judgment, which have been fully briefed.

Upon consideration of the briefing and for the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion, DENIES Defendant's motion, REVERSES the denial of benefits; and REMANDS for *de novo* administrative proceedings.[1]

**I.   BACKGROUND**

Plaintiff was born in Mexico on October 7, 1966. Admin R. ("AR") 349, 492. His native language is Spanish, but he speaks and understands English. AR 202. He completed three years of college and has past relevant work as a lab technician and a real estate agent. AR 20, 370. He is married but has been separated from his wife since 2003 or 2004, and he has three children. AR 350.

---

[1] This matter was submitted without oral argument pursuant to Civil Local Rule 16-5.

**Diagnosis of Thyroid Cancer and Thyroidectomy**

**(January 2001-October 2001)**

In 2001, Plaintiff was diagnosed with thyroid cancer. AR 595. He had a total thyroidectomy followed by radioactive iodine treatment. *Id.* The surgery was complicated by hypoparathyroidism and chronic pain in Plaintiff's right neck and shoulder. *Id.*

**First Award of Benefits**

**(January 2002-November 2013)**

Plaintiff received disability insurance benefits from January 2002 through November 2013. AR 359, 365. It is unclear from the record whether that award of benefits was based on disability resulting from Plaintiff's thyroid impairment or some other impairment(s). The record also is unclear as to why the benefits were terminated.

**Plaintiff's Treatment at VMC Emergency Department**

**(August 2014)**

On August 5, 2014, Plaintiff went to the Emergency Department of the Santa Clara Valley Medical Center ("VMC") and requested a refill of medication. AR 450-56. He also reported intermittent abdominal pain. *Id.* The Emergency Department took Plaintiff's medical history and ordered lab work. *Id.* Plaintiff was referred to Endocrinology to follow up on his thyroid condition. AR 457-59.

**Plaintiff's Applications for Social Security Benefits**

**(August 2014)**

On August 19, 2014[2], Plaintiff simultaneously filed applications for disability insurance benefits and supplemental security income. AR 349, 353. He alleged disability beginning April 1, 2006 resulting from a spectrum of causes including cancer of the thyroid, thyroid removal, and mental impairments including depression and memory loss. AR 349, 369.

---

[2] Although Plaintiff's applications are dated August 19, 2014, both the ALJ and Defendant state that the applications were filed on August 7, 2014. This discrepancy is immaterial to the Court's evaluation of the parties' cross-motions.

2

**Treatment for Thyroid Condition and Mental Impairments**
**(October 2014-January 2016)**

Plaintiff was seen in October 2014 by Dr. Lawrence Crapo of the VMC Endocrinology department. AR 458. Plaintiff told Dr. Crapo that he had a poor memory, that he could not recall where to obtain his medications, and that he had been taking his medications on and off for the last few years. *Id.* Dr. Crapo's notes indicate that Plaintiff's poor memory might be due to hypothyroidism and noncompliance with medication, and that Plaintiff might need a referral to Neurology. AR 459.

**Examination by Agency's Consultative Examining Physicians**
**(December 2014)**

On December 22, 2014, Plaintiff was examined by Dr. Clark Gable, an internal medicine doctor retained by the Commissioner. AR 492-94. Dr. Gable characterized Plaintiff as "a confused male, who can't answer most of the questions." AR 492. He recorded Plaintiff's reports of memory loss and depression but did not offer opinions as to those impairments. AR 492-94. Dr. Gable provided a functional capacity assessment based on Plaintiff's physical limitations, concluding that Plaintiff can sit up to six hours per day with usual breaks, can stand and walk up to six hours per day, and can lift ten pounds frequently and twenty pounds occasionally. *Id.* These limitations appear to be the equivalent of an RFC for light work. *See* 20 C.F.R. § 404.1567(b).

On December 30, 2014, Plaintiff was examined by Kim Goldman, Psy. D., a clinical psychologist retained by the Commissioner. AR 495-497. Dr. Goldman stated that she could not accurately assess Plaintiff's functional limitations because Plaintiff "made a volitional effort to simulate cognitive impairment." AR 497. Dr. Goldman concluded that Plaintiff was malingering. *Id.*

**Continuing Treatment for Thyroid Condition and Mental Impairments**
**(February 2015-January 2016)**

Plaintiff continued to be followed at VMC for his thyroid condition throughout 2015 and into 2016. AR 458-796. His doctors' treatment notes reflect that Plaintiff consistently

complained of depression and memory loss during that entire period. *Id.* In March 2015, Plaintiff's primary care physician, Dr. Rajalakshmi Kalimuthu, referred Plaintiff for a Neuropsychiatry evaluation. AR 506.

On April 17, 2015, Plaintiff was seen at VMC's Neurology Clinic by Dr. Rebecca Kate Miller. AR 521-26. On examination, Dr. Miller observed that Plaintiff had very slow processing speed and significant difficulty following instructions and understanding tasks even though he "[a]ppeared to be trying hard." AR 523. Dr. Miller stated that "[h]ighest suspicion is for primary psychiatric disease possibly comorbid with hypothyroidism." AR 525. The patient instructions following Plaintiff's April 2015 examination by Dr. Miller stated, "We think your memory issues are most likely due to hypothyroidism and depression." AR 556. Plaintiff continued to be followed by VMC's Neurology Clinic into 2016. AR 776. He was seen by Dr. Brajesh Kumar Agrawal on January 15, 2016. AR 776-82. Plaintiff reported depression and memory loss, and on examination Dr. Agrawal found Plaintiff to have very slow processing speed. *Id.*

Plaintiff's primary care physician, Dr. Kalimuthu, also referred Plaintiff to VMC's Adult Psychiatry department "for review of psychiatric diagnosis/diagnoses and treatment due to concern encountered in the ongoing primary care treatment of mild to moderate mental illness." AR 581. On August 20, 2015, Plaintiff was seen for a fifty-minute psychiatric evaluation by Dr. Benjamin L. Bregman. *Id.* Dr. Bregman found that Plaintiff appeared "to be a reliable historian," and concluded that he suffered from a "complex cognitive disorder that appears to not fit any clear potential organic etiologies." AR 589. Dr. Bregman also found Plaintiff to suffer from a cognitive disorder and depressive disorder. *Id.*

During this time frame, Plaintiff also was examined a second time by Dr. Goldman. AR 543. On June 2, 2015, Dr. Goldman once again opined that Plaintiff was malingering. AR 545.

**Denial of Benefits**

**(February 2016-September 2016)**

Plaintiff was denied benefits initially and upon reconsideration. AR 224-308. He requested and received a hearing before an administrative law judge ("ALJ"), which was scheduled for February 29, 2016. AR 190-223, 309-48. On that date, the ALJ heard testimony

4

from Plaintiff and from a vocational expert ("VE").  AR 190-223.

On March 29, 2016, the ALJ issued a written decision finding that Plaintiff was not disabled from November 1, 2013[3] through the date of the decision and thus was not entitled to benefits.  AR 12-22.  The Appeals Council affirmed the ALJ's decision on June 13, 2016 and it denied Plaintiff's request to reopen or change its decision on September 9, 2016.  AR 1-7.  Plaintiff now seeks judicial review of the ALJ's decision.

**II.    LEGAL STANDARD**

**A.    Standard of Review**

Pursuant to sentence four of 42 U.S.C. § 405(g), district courts "have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 USC § 405(g).  However, "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  Federal courts "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'" *Id.* (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014)).

A court "will disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (internal quotation marks and citations omitted).  A court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (internal quotation marks and citation omitted).   If the evidence is susceptible to more than one rational interpretation, the ALJ's findings must be upheld if supported by reasonable inferences drawn from the record. *Id.*

---

[3] Although Plaintiff's applications alleged disability beginning April 1, 2006, the ALJ presumably construed Plaintiff's applications to seek benefits as of the date his prior benefits were terminated.

5

Finally, even when the ALJ commits legal error, the ALJ's decision will be upheld so long as the error is harmless. *Brown-Hunter*, 806 F.3d at 492. However, "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id.* The court is "constrained to review the reasons the ALJ asserts." *Id.*

### B. Standard for Determining Disability

"To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, determining: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (internal quotation marks and citations omitted). The residual functional capacity ("RFC") referenced at step four is what a claimant can still do despite his or her limitations. *Id.* at 1160 n.5. "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

## III. DISCUSSION

At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since his alleged disability onset date of November 1, 2013. AR 14. At step two, the ALJ found that Plaintiff has a severe impairment, thyroid cancer, status post thyroidectomy. *Id.* The ALJ concluded that Plaintiff's claimed mental impairments are either non-severe or unsupported by the record. AR 14-17. At step three, the ALJ concluded that Plaintiff's thyroid impairment does not meet or medically equal the severity of one of the listed impairments in the regulations. AR 17-18.

Prior to making a step four determination, the ALJ found that Plaintiff has the RFC to perform a full range of light work. AR 18. In making that finding, the ALJ discounted Plaintiff's claim of severe mental impairments. AR 18-20. The ALJ concluded at step four that Plaintiff

6

United States District Court
Northern District of California

1 could not perform his past relevant work as a laboratory technician or a real estate agent. AR 20.
2 However, the ALJ concluded at step five that Plaintiff could perform other jobs that exist in
3 significant numbers in the national economy. AR 21. The ALJ therefore found that Plaintiff was
4 not disabled. *Id.*

Plaintiff asserts that the ALJ's decision, and in particular his rejection of Plaintiff's claimed mental impairments, is legally insufficient because he: did not resolve conflicts in the medical evidence under the applicable legal standard and in fact did not even acknowledge probative records from Plaintiff's treating physicians; failed to make a credibility finding with respect to Plaintiff's hearing testimony; gave undue weight to Plaintiff's activities of daily living questionnaire; and failed to obtain the file regarding Plaintiff's prior award of disability benefits as was required to develop the record adequately. The Court addresses those arguments below. Because Defendant argues that Plaintiff's activities of daily living constitute an adequate basis for the ALJ's rejection of medical evidence, the Court addresses activities of daily living in section III.A. than in its own subsection.

### A. Conflicts in the Medical Evidence Regarding Mental Impairments

Plaintiff argues that the ALJ did not resolve conflicts in the medical evidence as required under controlling case law and in fact did not even acknowledge the existence of probative records from Plaintiff's treating physicians relating to his claim of severe mental impairments.

"Generally, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." *Ghanim*, 763 F.3d at 1160. "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it will be given controlling weight." *Id.* (internal quotation marks, citation, and brackets omitted). If the treating physician's opinion is contradicted by the opinion of another physician, the ALJ may reject the treating physician's opinion but only based upon "specific and legitimate reasons that are supported by substantial evidence." *Id.* (internal quotation marks and citation omitted). In determining how much weight to give a treating physician's opinion, the ALJ must consider the

following factors: the length of the treatment relationship and the frequency of examination by the treating physician, the nature and extent of the treatment relationship between the patient and the treating physician, the supportability of the physician's opinion with medical evidence, and the consistency of the physician's opinion with the record as a whole." *Id.* (internal quotation marks, citation, and brackets omitted). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (internal quotation marks, citation and alteration omitted).

Plaintiff submitted treatment records spanning the period August 2014 through January 2016. AR 458-796. Those records document Plaintiff's treatment in the VMC Endocrinology, Neurology, and Psychiatry departments from 2014 through 2016. *Id.* The records reflect that during that period Plaintiff consistently complained of mental impairments including depression and memory loss. *Id.* None of Plaintiff's treating physicians opined that he was not suffering from those mental impairments. To the contrary, the doctors who treated Plaintiff in the Neurology and Psychiatry departments found on examination that Plaintiff had very slow processing speed and suffered from a cognitive disorder. AR 523, 589, 776-82.

The treating physicians' opinions regarding Plaintiff's mental impairments are contradicted by the opinions of the physicians and the psychologist retained by the Commissioner. Most notably, Dr. Goldman, the psychologist, found that Plaintiff was malingering. AR 497, 545. Dr. Gable, an examining physician, found that Plaintiff is capable of light work. AR 492-94. Finally, the physicians who reviewed Plaintiff's applications at the initial and reconsideration levels determined that Plaintiff is capable of a reduced range of medium work and a nearly full range of light work, respectively. AR 235, 249, 266, and 282.

Because Plaintiff's treating physicians' opinions regarding his mental impairments are contradicted by examining and reviewing physicians, this Court's task is to determine whether the ALJ provided "specific and legitimate reasons that are supported by substantial evidence" for rejecting the treating physicians' opinions. *See Ghanim*, 763 F.3d at 1160. The ALJ mentioned only two of Plaintiff's treating physicians, Drs. Crapo and Miller. AR 19. He simply ignored the

8

1  records of Plaintiff's other treating physicians, including Dr. Agrawal, who found Plaintiff to have
2  very slow processing speed, and Dr. Bregman, who found Plaintiff to suffer from cognitive and
3  depressive disorders.  AR 589, 776-82.  With respect to the two treating physicians he did
4  mention, the ALJ failed to indicate what weight was accorded to their opinions.  AR 19.  He
5  certainly did not articulate specific and legitimate reasons for rejecting their opinions.

6  Moreover, while the ALJ assigned "great weight" to Dr. Gable's opinion and to that of the reviewing physicians retained by the Commissioner at the reconsideration level, the ALJ did not cite those opinions as bases for rejecting Plaintiff's treating physicians' opinions that Plaintiff suffered from mental impairments.  Nor did the ALJ cite Dr. Goldman's opinion for that purpose.  While the ALJ discussed Dr. Goldman's diagnosis of malingering, the ALJ did not expressly adopt or reject that diagnosis and did not indicate what weight was given Dr. Goldman's opinion.  AR 17.  Instead, the ALJ stated that it was not necessary for him to assign weight to Dr. Goldman's opinion, and that Dr. Goldman's observations were considered "in the broader context of the claimant's treatment record, as demonstrated by the medical evidence, in evaluating the claimant's allegation of disability."  AR 17.  These statements leave the Court in the dark as to whether ALJ did or did not rely on Dr. Goldman's diagnosis of malingering in rejecting Plaintiff's claimed mental impairments.

Defendant argues that even if the ALJ's rejection of Plaintiff's claimed mental impairments at step two was error, such error was harmless because the ALJ proceeded through all five steps of the sequential analysis rather than stopping at step 2.  The Ninth Circuit has made clear that "[s]tep two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, --- F.3d ----, 2017 WL 3862450, at *5 (9th Cir. Sept. 5, 2017).  "It is not meant to identify the impairments that should be taken into account when determining the RFC." *Id.*  When determining the claimant's RFC, the ALJ must consider limitations and restrictions imposed by all of the claimant's impairments, whether or not they are severe. *Id.*  "The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.*

It does not follow, however, that the ALJ's rejection of Plaintiff's claimed mental impairments in this case was harmless.  The ALJ did not credit those impairments determining

9

Plaintiff's RFC, which the ALJ found was the full range of light work. *See* AR 18-20. This case is factually distinguishable from *Buck*, in which all impairments were taken into account by the ALJ when determining the RFC. *See Buck*, 2017 WL 3862450, at *5. The ALJ's conclusion that Plaintiff had the RFC to perform the full range of light work, without any limitations due to memory loss or other cognitive impairments, led the ALJ to conclude that Plaintiff was not disabled at step 5. AR 21. Thus the ALJ's rejection of Plaintiff's claimed mental impairments was critical to his denial of Plaintiff's claim for benefits.

Defendant next argues that the ALJ's rejection of mental impairments was supported by substantial evidence in the record, including Dr. Goldman's opinion of malingering and Plaintiff's activities of daily living. With respect to Dr. Goldman's opinion, that evidence may have provided an adequate basis for rejection of the treating physicians' opinions had the ALJ expressly relied on it. However, the ALJ did not do so. "A reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-Hunter*, 806 F.3d at 492. The court is "constrained to review the reasons the ALJ asserts." *Id.*

With respect to the activities of daily living, a conflict between a treating physician's opinion and the claimant's daily activities may justify rejecting the treating physician's opinion. *Ghanim*, 763 F.3d at 1162. While the ALJ did appear to base his rejection of Plaintiff's claim of severe mental impairments in part on Plaintiff's ability to perform basic daily activities, he did not identify specific conflicts between those activities and treating physicians' opinions. In fact, the ALJ did not even identify the daily activities upon which he relied. The ALJ stated that, "[a]lthough the claimant alleges disabling limitation, the record shows that he retained the ability to engage in a variety of activities of daily living during the adjudicatory period." AR 19. An ALJ must identify which activities the ALJ believes undermines other evidence, because "[a] claimant need not be completely incapacitated to receive benefits." *Ghanim*, 763 F.3d at 1162.

Defendant next asserts that the ALJ found that Plaintiff did not always comply with his treatment. Defendant does not cite, and this Court is not aware, of any cases holding that a claimant's failure to comply with prescribed treatment constitutes an adequate basis for rejecting a
10

treating physician's opinion regarding the existence of an impairment. The Court finds Defendant's position particularly lacking in merit where, as here, Plaintiff claims severe memory loss and other cognitive impairments which could cause the failure to comply with treatment.

Finally, Defendant contends that the record did not contain any medical "opinions" from Plaintiff's treating physicians; that the treating physician's records regarding Plaintiff's mental impairments and potential causes therefor constituted only "findings"; and that the ALJ was not obligated to address "findings" as opposed to "opinions." This contention is not supported by the authorities upon which Defendant relies. Defendant cites the regulation defining "medical opinion," which reads as follows: "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Plaintiff submitted treatment records which meet this definition and which were not addressed by the ALJ. For example, on August 20, 2015, Plaintiff was seen for a fifty-minute psychiatric evaluation by Dr. Bregman. AR 581. Dr. Bregman found that Plaintiff appeared "to be a reliable historian," and concluded that he suffered from a "complex cognitive disorder that appears to not fit any clear potential organic etiologies." AR 589. Dr. Bregman also found Plaintiff to suffer from cognitive and depressive disorders. *Id.* Dr. Bregman thus provided statements reflecting his judgment about the nature and severity of Plaintiff's mental impairments.

Defendant cites *Champagne v. Colvin* for the proposition that a medical record does not constitute an "opinion" if it does not specify the claimant's functional limitations. In that case, the Ninth Circuit found that the ALJ "reviewed the medical evidence in the record, including the treatment notes of Champagne's providers," and that "Champagne identified no additional medically necessary limitation that should have been included in the residual functional capacity." *Champagne v. Colvin*, 582 F. App'x 696, 697 (9th Cir. 2014). *Champagne* is factually distinguishable from the present case, in which the ALJ appears to have ignored medical evidence from Plaintiff's treating physicians and Plaintiff has identified medical limitations which he contends should have been incorporated into his RFC.

11

The Court concludes that the ALJ erred in failing to consider all of the relevant medical evidence and in failing to resolve conflicts in the medical evidence as required under controlling case law. "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) "In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13.

### 2. Plaintiff's Credibility

Plaintiff argues that the ALJ also erred in failing to make a credibility finding with respect to Plaintiff's hearing testimony. Plaintiff testified that: he did not remember how long he had been living in Northern California; he thought he previously had lived as a homeless person in Los Angeles, although he could not remember; he could not remember his last job or when he last worked; sometimes when he goes to doctor's appointments he cannot remember his birthday; and he did not remember his thyroid surgery. AR 205-212. Plaintiff also testified that he is supposed to take his thyroid medicine every day, but sometimes he forgets. AR 215. Plaintiff's testimony, if believed, would be evidence of severe mental impairments. The ALJ summarized Plaintiff's hearing testimony, but he did not make any credibility finding with respect to Plaintiff's testimony or indicate what weight the testimony was given.

"[T]he courts have consistently required that there be an explicit finding whether the Secretary believed or disbelieved the claimant whenever the claimant's credibility is a critical factor in the Secretary's decision." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). Here, had Plaintiff's testimony regarding his mental impairments been credited, the ALJ may have reached a different conclusion on disability.

Accordingly, the ALJ erred in failing to make a credibility finding with respect to Plaintiff's testimony.

### 3. Development of the Record

"The ALJ in a social security case has an independent duty to fully and fairly develop the

record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation marks and citation omitted). "This duty extends to the represented as well as to the unrepresented claimant." *Id.*

At the hearing, Plaintiff's counsel requested that the ALJ obtain the file regarding Plaintiff's prior receipt of disability benefits for more than ten years, ending in November 2013. The ALJ's decision indicated that the file could not be located. AR 16 n.1. Because the records are fairly recent, they should be available. It may be that the ALJ was unable to locate the records before he wished to issue his written decision, but that he could locate them on remand. The prior payment of benefits so close in time before the period of disability at issue in the present appeal may shed light on Plaintiff's claimed impairments.

Thus while it does not appear that the ALJ erred in failing to develop the record, since he tried to obtain the records in question, it may well be that that aspect of the record could be developed on remand.

### 4. Appropriate Remedy

Having concluded that the ALJ committed the errors discussed above, the Court must decide whether the errors are harmless and, if not, the appropriate remedy. "An error is harmless only if it is inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter*, 806 F.3d at 494 (internal quotation marks and citations omitted). Here, the errors were not harmless, because they went to key evidence regarding Plaintiff's claimed mental impairments. Moreover, the Court cannot discern the agency's path absent appropriate consideration of all relevant evidence of record. The Court therefore must determine the appropriate remedy.

Plaintiff requests that the case be remanded to the Commissioner for an immediate award of benefits. Defendant requests that any remand be for further proceedings. A remand for an immediate award of benefits may be appropriate in the "rare circumstances" in which the following three requirements are met: (1) "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; (2) "the record has been fully developed and further administrative proceedings would serve no useful purpose"; and (3) "if

13

the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* at 495 (internal quotation marks and citation omitted). Even if all three requirements are satisfied, the Court "retain[s] flexibility in determining the appropriate remedy." *Id.* (internal quotation marks and citation omitted). The Court "may remand on an open record for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (internal quotation marks and citation omitted).

The Court concludes that a remand for further proceedings is appropriate here. The first factor clearly is met, as the ALJ failed to provide legally sufficient reasons for failing to credit opinions of Plaintiff's treating physicians and Plaintiff's testimony. The third factor likewise is met, as the ALJ would be required to find Plaintiff disabled on remand if his treating physicians' opinions and his hearing testimony were credited as true. However, the second factor is not met. The record has not been fully developed, as Plaintiff's file regarding the prior grant of disability benefits has not been found. Moreover, the Court cannot say that further administrative proceedings would serve no useful purpose. It appears that further proceedings are necessary so that all of the medical evidence, Plaintiff's testimony, and the missing file regarding the prior disability benefits may be evaluated under the applicable legal standards. The Court thus finds that remand for further proceedings is the most appropriate remedy. "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Brown-Hunter*, 806 F.3d at 496.

Accordingly, the Court will grant in part and deny in part Plaintiff's motion for summary judgment and will deny Defendant's cross-motion for summary judgment. Pursuant to sentence four of 42 U.S.C. § 405(g), the Court will reverse the denial of benefits and remand for *de novo* administrative proceedings consistent with this order. 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.")

**IV. ORDER**

(1) Plaintiff's motion for summary judgment is GRANTED IN PART AND DENIED IN PART;

(2) Defendant's motion for summary judgment is DENIED;

(3) The denial of benefits is REVERSED; and

(4) The matter is REMANDED to the Commissioner for *de novo* proceedings consistent with this order.

Dated: September 13, 2017

BETH LABSON FREEMAN
United States District Judge